UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 01-11979 PW

| | |
|---|---|
| KEVIN W. TOBIN,<br>    Plaintiff<br><br>v.<br><br>LIBERTY MUTUAL GROUP,<br>    Defendant | **FIRST AMENDED<br>COMPLAINT** |

### INTRODUCTORY STATEMENT

This is a complaint for damages and other relief arising out of the employment of the plaintiff Kevin W. Tobin by defendant Liberty Mutual Group. The claims include wrongful termination, unlawful age discrimination, unlawful handicapped discrimination and a failure to accommodate the plaintiff because of his handicapped status. Plaintiff previously filed a complaint with the Massachusetts Commission Against Discrimination on or about July 2, 2001 as Docket no. 00131854. Plaintiff seeks removal of the MCAD complaint to Superior Court pursuant to G.L.c. 151B § 9. Jurisdiction is proper in Plymouth County as Mr. Tobin was employed in the Hingham office of Liberty Mutual and most of the acts complained of herein occurred in Plymouth County. After the filing of this action in Superior Court of Plymouth County, the action was removed by defendant to the United States District Court.

### FACTS

1. Plaintiff Kevin W. Tobin (hereinafter "Mr. Tobin") is an individual and a resident of Scituate, Plymouth County, Massachusetts.

2. On information and belief, Liberty Mutual Group (hereinafter "Liberty Mutual") is a corporation duly organized pursuant to the laws of the Commonwealth of Massachusetts, with its headquarters located at 175 Berkeley Street, Boston, Suffolk County, Massachusetts.

3. Plaintiff was born on September 26, 1945.



4. On or about September 16, 1964, the plaintiff was first hired by the defendant as a home officer in administrative services in the Boston headquarters of the defendant.

5. Shortly thereafter, the plaintiff was promoted to the position of law clerk in the Boston headquarters of the defendant.

6. Sometime in May 1968, the plaintiff was promoted to sales representative and began working out of the Braintree office of the defendant.

7. Excepting a brief period of disability in 1998, from June 1968 until his wrongful discharge on or about January 10, 2001, the plaintiff continuously and without interruption worked for the defendant as a sales representative.

8. During the course of his career at Liberty Mutual, Mr. Tobin became a member of the "Top Producers Club" which acknowledged Mr. Tobin's superior performance at Liberty Mutual.

9. Mr. Tobin was also awarded the "HO+" award in 1985, 1989 and 1990 which acknowledged his superior sales with respect to homeowners insurance.

10. For the last ten or fifteen years of Mr. Tobin's career at Liberty Mutual, Mr. Tobin's annual book of business was between 2.25 million dollars and 3 million dollars.

11. During the course of his career at Liberty Mutual, Mr. Tobin experienced a 93.3% rate of retention of customers, a rate significantly higher than the average sales representative employed by Liberty Mutual.

12. During the course of his career at Liberty Mutual, Mr. Tobin had a better loss ratio percentage than most other sales representatives employed by Liberty Mutual.

13. During this period of time, Liberty Mutual earned a significant profit on Mr. Tobin's book of business in that the amount of claims paid by Liberty Mutual on such business was statistically significantly less than would be anticipated.

14. During the last ten years of Mr. Tobin's career at Liberty Mutual, more than one-third of his annual compensation consisted of bonus

compensation for revenue generated as a result of MR. Tobin's sales efforts.

15. Sometime in 1994, Mr. Tobin first began experiencing problems in his workplace.

16. Sometime in 1995, Mr. Tobin was diagnosed as a bi-polar manic by Dr. William G. Kantar.

17. Prior to this time, Mr. Tobin had been satisfactorily performing the duties of his employment and enjoyed an unblemished record of accomplishment for more than 26 years of employment.

18. After his diagnosis, with medication, Mr. Tobin was able to continue to successfully function in the workplace.

19. Mr. Tobin's disability made it difficult for him to concentrate and difficult for him to be organized.

20. Mr. Tobin's disability, at times, left him very fatigued.

21. At sometime unknown to the plaintiff, Liberty Mutual, through its employees, commenced a pattern of conduct intended to build a case to justify the termination of the employment of Mr. Tobin.

22. On or about November 21, 1997, Mike Robin, Mr. Tobin's supervisor, gave Mr. Tobin a written warning which unfairly and inaccurately portrayed the workplace conduct and activity of Mr. Tobin and falsely accused him fraudulent activity with respect to the sale of certain boat insurance policy.

23. On November 21, 1997, Mike Robin issued Mr. Tobin a written warning regarding poor sales performance.

24. On divers times, supervisors of Mr. Tobin caused the personnel file of Mr. Tobin to contain inaccurate and unfair statements relative to Mr. Tobin's job performance.

25. On one occasion, a memorandum was added to Mr. Tobin's file accusing him of using inappropriate language when responding to a supervisor when, in fact, the incident never happened.

26. Due to the stresses of his workplace, Mr. Tobin filed for short term disability based on his bi-polar condition and first collected disability payments sometime in January 1998.

27. Mr. Tobin returned from his disability leave and resumed working for Liberty Mutual at the Hingham office sometime in July 1998.

28. Upon his return to the workplace, Mr. Tobin was immediately placed on probation by his supervisor.

29. Since that date, Mr. Tobin has been on and off probation.

30. Since his return to the workplace, Liberty Mutual has failed to accommodate Mr. Tobin.

31. Not only has Liberty Mutual failed to accommodate Mr. Tobin's disability, it has actively discriminated against Mr. Tobin, and has taken action intended to impair the performance of Mr. Tobin in order to justify its contemplated termination of his employment.

32. Liberty Mutual has failed, neglected and refused to provide Mr. Tobin with adequate administrative assistance while providing such support to every other sales representative in his office.

33. Mr. Tobin requested greater administrative assistance in order to service his book of business.

34. Mr. Tobin was provided with one assistant.

35. Mr. Tobin's assistant was given other duties in the office in addition to assisting Mr. Tobin.

36. Mr. Tobin's assistant usually spent at least one day per week doing duties not related to assisting Mr. Tobin.

37. The duties of Mr. Tobin's assistant included filling in at other offices where staff was absent, training other staff and doing administrative work unrelated to Mr. Tobin's business.

38. Leonard Shepard, a similarly situated sales representative in Mr. Tobin's office, had three full time assistants to exclusively service his book of business.

39. Ed Mace, a similarly situated sales representative in Mr. Tobin's office, had two full time assistants to exclusively service his book of business.

40. Gordon Hall, a similarly situated sales representative in Mr. Tobin's office, had one full time assistant to exclusively service his book of business.

41. The assistants of Mr. Shepard, Mr. Mace and Mr. Hall had no duties other than to service their accounts.

42. Sometime in December 2000, Mr. Tobin virtually lost all his administrative support when his assistant, Linda Bedard, was assigned to train new sales representatives.

43. This problem required that Mr. Tobin service his own accounts, taking valuable time away from selling insurance and meeting the sales quotas established by Liberty Mutual.

44. Mr. Tobin requested that Liberty Mutual provide him with so-called "mass merchandising contracts" from supervisors Mike Robin and Nina Schwitters.

45. The "mass merchandising contracts" were exclusive contracts to sell insurance at designated workplaces at a significant discount to the customer.

46. The "mass merchandising contracts" were with well-known corporate clients such as EMC and UPS.

47. The "mass merchandising contracts" permitted sales representatives to easily make the sales quotas while expending a minimal amount of time and effort.

48. Despite the requests of Mr. Tobin, at all times material, Liberty Mutual failed, neglected and refused to award Mr. Tobin "mass merchandising contracts."

49. While Mr. Tobin was denied the "mass merchandising contracts" every other sales representative in his office was awarded the "mass merchandising contracts."

50. Despite the fact that Mr. Tobin was not awarded any "mass merchandising contracts", Mr. Tobin was still expected to maintain the same sales numbers as the other sales representatives who were awarded the said contracts.

51. Sometime around Christmas of 2000 or New Year's of 2001, Mr. Tobin had a conversation with his supervisor, Nina Schwitters.

52. Mr. Tobin asked Ms. Schwitters how he was doing and whether he was in danger of being fired.

53. Mr. Tobin stated to Ms. Schwitters that "he wanted to do what was best for me."

54. Ms Schwitters told the plaintiff that he was "doing all right." She said he was well organized and had mastered the new customer acquisition workbench (a sophisticated computer program).

55. Ms. Schwitters understood Mr. Tobin's statement of "doing what was best for me" to refer to the filing of a second disability claim by Mr. Tobin.

56. Understanding that Mr. Tobin was considering filing a disability claim, Ms. Schwitters gave positive feedback to Mr. Tobin to encourage him to remain on the job while simultaneously orchestrating his termination.

57. On or about January 10, 2001, Mr. Tobin was wrongfully terminated from Liberty Mutual with no warning.

58. As a result of being fired, Mr. Tobin has lost income, and valuable retirement and pension benefits.

## LEGAL CLAIMS

### Count I
### Age Discrimination And/Or Retaliation
### G.L.c. 151B

59. Plaintiff hereby realleges the allegations set forth in all the previous paragraphs and incorporates them as if set out herein.

60. The plaintiff has timely satisfied all the prerequisites to suit under G.L.c. 151B.

61. Defendant discriminated against the plaintiff because of his age and has retaliated against him for his exercise of his legal rights under G.L.c. 151B.

62. As a result thereof, the plaintiff suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## Count II
## Breach of Covenant of Good
## Faith and Fair Dealing

63. Plaintiff hereby realleges the allegations set forth in all the previous paragraphs and incorporates them as if set out herein.

64. Defendant's termination of plaintiff's employment was in violation of G.L.c. 149 § 24A and in retaliation of his efforts to exercise of his legal rights.

65. Defendant has breached the Covenant of Good Faith and Fair Dealing implied by law in the employment relationship with plaintiff.

66. As a result thereof, the plaintiff suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## Count III
## Age Discrimination And/Or Retaliation
## 29 U.S.C. § 621
## Age Discrimination in Employment Act

67. Plaintiff hereby realleges the allegations set forth in all the previous paragraphs and incorporates them as if set out herein.

68. Defendant discriminated against the plaintiff because of his age and has retaliated against him for his exercise of his legal rights.

69. As a result thereof, the plaintiff suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count IV
### Handicap Discrimination And/Or Retaliation
### G.L.c. 151B

70. Plaintiff hereby realleges the allegations set forth in all the previous paragraphs and incorporates them as if set out herein.

71. The plaintiff has timely satisfied all the prerequisites to suit under G.L.c. 151B.

72. Defendant discriminated against the plaintiff because of his disability and has retaliated against him for his exercise of his legal rights under G.L.c. 151B.

73. As a result thereof, the plaintiff suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### Count V
### Handicap Discrimination And/Or Retaliation
### 42 U.S.C. § 12111
### Americans with Disabilities Act

74. Plaintiff hereby realleges the allegations set forth in all the previous paragraphs and incorporates them as if set out herein.

75. The plaintiff has timely satisfied all the prerequisites to suit under G.L.c. 151B.

76. Defendant discriminated against the plaintiff because of his disability and has retaliated against him for his exercise of his legal rights under G.L.c. 151B.

77. As a result thereof, the plaintiff suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## Count VI
### Failure to Accommodate
### G.L.c. 151B

78. Plaintiff hereby realleges the allegations set forth in all the previous paragraphs and incorporates them as if set out herein.

79. The plaintiff has timely satisfied all the prerequisites to suit under G.L.c. 151B.

80. Defendant discriminated against the plaintiff because of his disability and has retaliated against him for his exercise of his legal rights under G.L.c. 151B.

81. As a result thereof, the plaintiff suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## Count VII
### Wrongful Termination

82. Plaintiff hereby realleges the allegations set forth in all the previous paragraphs and incorporates them as if set out herein.
83. Liberty Mutual wrongfully terminated the plaintiff from his employment.

84. The plaintiff has timely satisfied all the prerequisites to suit under G.L.c. 151B.

85. As a result thereof, the plaintiff suffered loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### JURY DEMAND

THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

WHEREFORE, the plaintiff requests the Court to order the defendant to immediately reinstate the plaintiff, award to the plaintiff damages in an amount to be determined by the Court, award multiple damages,

interest, costs, attorneys fees, and such other relief as the Court deems just and proper.

Respectfully submitted,
KEVIN W. TOBIN
By his attorney,

Dated: November 2/ , 2001

_____
Frank J. Frisoli, Jr., Esq.
BBO #180440
Frisoli & Frisoli
797 Cambridge Street
Cambridge, MA 02141
617-354-2220

**CERTIFICATE OF SERVICE**

      I, Frank J. Frisoli, Jr., hereby certify that a true copy of the above document was served upon the attorney of record for the respondent by mailing a true copy to Michael Chinitz, Esq., Rose & Associates, 400 Commonwealth Avenue, Boston, MA 02215 via first class postage pre-paid mail this day.

_____
Frank J. Frisoli, Jr.

Date: November 21, 2001